UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

SHERRY ANN MURRAY,

                              *Plaintiff,*

        -against-

NEWREZ LLC doing business as Shellpoint Mortgage
Servicing; and PHH MORTGAGE CORPORATION doing
business as PHH Mortgage Services,

                              *Defendants.*

24-CV-6160 (ARR)

**OPINION & ORDER**

ROSS, United States District Judge:

        Plaintiff Sherry Ann Murray brings the instant action against defendants Newrez LLC ("Newrez") and PHH Mortgage Corporation ("PHH"), alleging that defendants violated the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601 *et seq.*, its implementing regulation, Regulation X, 12 C.F.R. §§ 1024.1 *et seq.*, and New York State laws that prohibit deceptive business acts, N. Y. Gen. Bus. Law § 349, and mandate annual accounting reports for mortgage loans, 3 N.Y. Comp. Codes R. & Regs. Tit. 3 § 419.4. Ms. Murray brings these claims based on defendants' alleged failure to respond to her written requests for information related to her mortgage loan account, specifically regarding the disclosure of charges and other fees added to her balance following a loan modification agreement that she entered into in 2011. For the reasons stated below, I find that the allegations in the Amended Complaint ("Amended Complaint" or "AC") are insufficient to articulate a plausible claim under RESPA for which relief may be granted and dismiss Ms. Murray's claims without prejudice.

# BACKGROUND

## I.    Factual Background[1]

Plaintiff Ms. Murray is the obligor on a mortgage dated February 9, 2005 (the "Mortgage"), securing repayment of a loan in the original principal amount of $440,325. ECF 14, AC ¶ 11; ECF 14-1 ("Mortgage"). The Mortgage was recorded as a lien against real property owned by Ms. Murray located at 87 Blake Avenue, Brooklyn on March 2, 2005. AC ¶¶ 10–11. Ms. Murray defaulted on her monthly payment due on September 1, 2009, and several payments thereafter, and the noteholder commenced a foreclosure action on March 16, 2010.[2] Defs.' Mot. at 1; *see also* Pl.'s Opp. at 12–13. The parties to the foreclosure action stipulated to its dismissal, and the action's final disposition date was October 13, 2011. ECF 16-4.

The Mortgage was modified by a loan modification agreement dated October 1, 2011 (the "Loan Modification") between Ms. Murray and GMAC Mortgage, LLC, which was recorded on November 14, 2011. AC ¶ 12; ECF 14-2 ("Loan Modification").[3] The total balance due prior to the date of the Loan Modification was $510,602.15, which plaintiff refers to as the "old principal balance." *Id.* ¶ 15. The Loan Modification split the "old principal balance" into a $131,717.67

---

[1] In considering the instant motion, I accept as true the factual allegations in plaintiff's Amended Complaint. *See Kane v. Mount Pleasant Cent. Sch. Dist.*, 80 F.4th 101, 106 (2d Cir. 2023).

[2] While facts regarding the foreclosure action are not included in plaintiff's Amended Complaint, I take judicial notice of the proceeding as it is "not subject to reasonable dispute in that it is … capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned." *Jackson v. Caliber Home Loans*, No. 18-CV-4282, 2019 WL 3426240, at *2 n.1 (E.D.N.Y. July 30, 2019) (citing Fed. R. of Evid. 201(b)). Ms. Murray acknowledges that the foreclosure action was "dismissed and never adjudicated on the merits" in her opposition brief and that I "may take judicial notice of the existence, pendency, and dismissal of the action reflected in court records." Pl.'s Opp. at 12–13.

[3] In determining the sufficiency of Ms. Murray's complaint, I may consider documents attached to it. *See Tannerite Sports, LLC v. NBCUniversal News Grp., a division of NBCUniversal Media, LLC*, 864 F.3d 236, 247–248 (2d Cir. 2017).

"Deferred Principal Balance" that will be due as a "balloon payment" at maturity on March 1, 2035, and a "New Principal Balance" of $378,884.48. *Id.* ¶¶ 12–15. Ms. Murray is not required to pay interest or make monthly payments on the Deferred Principal Balance amount of $131,717.67. Loan Modification at 4. The New Principal Balance of $378,884.48 had an interest rate of 3.875% until October 1, 2016, when it increased to 4.25%. *Id.* ¶¶ 14–15; Loan Modification at 4.

Ms. Murray alleges that the Loan Modification "provide[d] no information regarding the amounts located in either the 'Deferred Principal Balance,' or the 'New Principal Balance,' of Plaintiff's loan.'" *Id.* ¶ 15.[4] Plaintiff observes that the "old principal balance" of $510,602.15 refinanced by the 2011 Loan Modification is a $70,277.15 increase from the 2005 Mortgage's original principal of $440,325.[5] This $70,277.15 is a baseline amount of "undisclosed and unidentified fees, interest, advances, and other charges and amounts" that Ms. Murray alleges were unlawfully added to her loan balance by the Loan Modification. *Id.* ¶¶ 16–17. The nature of these fees was not fully or properly disclosed to Ms. Murray or her attorneys in connection with the Loan Modification, and she was also charged interest on these fees. *Id.* ¶¶ 18–19. Ms. Murray alleges that defendants and their predecessors-in-interest "continued adding excessive, improper, and/or illegal [sums]" to her loan balance since she entered into the Loan Modification in 2011. *Id.* ¶ 20.

---

[4] While the body of the exhibit attached to Ms. Murray's complaint does specify the total dollar amount of each balance, I take her allegation to mean that the agreement did not provide an exact accounting of the charges and fees that made up each total. Modification Agreement at 4.

[5] Defendants argue that the increase in total principal balance was reasonable given that Ms. Murray had previously defaulted on her monthly payments and entered into foreclosure proceedings. Defs.' Mot. at 3 n.4. As I discuss below, I do not reach the factual questions underlying Ms. Murray's allegation that defendants inappropriately charged her fees in the amount of $70,277.15 or more because she has not sufficiently alleged actual damages under RESPA.

Pursuant to a subservicing agreement between Ocwen Financial Corporation and New Residential, defendant PHH has been the servicer or subservicer of Ms. Murray's mortgage loan account since 2018. *Id.* ¶ 32. Defendant Newrez has been the master servicer of Ms. Murray's mortgage since April 4, 2019. *Id.* ¶ 33. Ms. Murray did not receive notice of any servicing transfers related to her Mortgage. *Id.* ¶ 24.

On May 6, 2024, Ms. Murray's attorneys mailed two separate letters, which she refers to as Qualified Written Requests ("QWR"), to PHH and Newrez, seeking information about the servicing of her mortgage loan account and the amounts included in her loan balance. *Id.* ¶ 34. PHH and Newrez never acknowledged receipt of the purported QWRs or provided a written response. *Id.* ¶¶ 37–38. Ms. Murray's attorneys again mailed QWRs to PHH and Newrez on June 18, 2024. *Id.* ¶ 39. Again, neither PHH nor Newrez acknowledged receipt or provided a written response. *Id.* ¶¶ 40–41.

### B. Procedural History

Ms. Murray filed her complaint on September 4, 2024. ECF 1.[6] Ms. Murray filed her Amended Complaint on November 22, 2024. ECF 14. The AC alleges that defendants, as the servicer of Ms. Murray's loans, had a duty under RESPA, 12 U.S.C. § 2601, *et seq.*, and its implementing regulation, Regulation X, 12 C.F.R. § 1024.1, *et seq.*, to provide account information and remedy servicing and account errors. AC ¶¶ 45–50. First, Ms. Murray alleges that defendants failed to acknowledge receipt and respond to her QWRs in violation of 12 U.S.C. §§ 2605(e), (f) and RESPA's implementing regulation, 12 C.F.R. §§ 1024.35, 1024.36. *Id.* ¶¶ 51–82.

---

[6] Defendants submitted a letter requesting a pre-motion conference regarding an anticipated motion to dismiss on October 31, 2024, ECF 12, and Ms. Murray submitted a letter in response on November 7, 2024. ECF 13. On November 8, 2024, I determined that a pre-motion conference was not necessary and granted Ms. Murray leave to amend her complaint and defendants leave to bring their proposed motion to dismiss.

4

Second, Ms. Murray alleges that defendants failed to provide required notice of servicing transfers in violation of 12 U.S.C. §§ 2605(b), (c) and RESPA's implementing regulation 12 C.F.R. § 1024.33. *Id.* ¶¶ 83–90. Finally, Ms. Murray brings two New York State law claims. The first alleges that under N.Y. Gen. Bus. Law § 349, defendants have engaged in deceptive acts and practices in the servicing of Mr. Murray's loan. *Id.* ¶¶ 91–101. The second state law claim alleges that there has been a lack of proper accounting under 3 N.Y.C.R.R. §§ 419.4(a)-(d). *Id.* ¶¶ 102–110.

Defendants moved to dismiss the amended complaint on December 12, 2024, pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6). ECF Nos. 16 & 17 ("Defs.' Mot."). Ms. Murray filed her opposition on January 23, 2025. ECF 18-6 ("Pl.'s Opp."). Defendants submitted their reply on January 28, 2025. ECF 20 ("Defs.' Reply").

## DISCUSSION

### I.    Rule 12(b)(1) Motion to Dismiss

Defendants cite Rule 12(b)(1) as a basis for their motion to dismiss but fail to offer *any* argument as to why it applies or how exhibits referenced in its motion demonstrate plaintiff's lack of standing or the court's lack of subject matter jurisdiction. Defs.' Mot. at 1.[7] Therefore, I take defendants' Rule 12(b)(1) motion to be a facial challenge. "When the Rule 12(b)(1) motion is facial, *i.e.*, based solely on the allegations of the complaint or the complaint and exhibits attached to it … the plaintiff has no evidentiary burden" and "[t]he task of the district court is to determine

---

[7] When a defendant moves to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction, and also moves to dismiss on other grounds, a reviewing court should consider the Rule 12(b)(1) motion first. *Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990). This is because a court without subject matter jurisdiction necessarily lacks the jurisdiction to decide merits questions. *See Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 198–99 (2d Cir. 2005) ("Without … Article III standing, a federal court has no subject matter jurisdiction to hear the merits of a … claim.").

whether the Pleading alleges facts that affirmatively and plausibly suggest that the plaintiff has standing to sue." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016) (citation and quotation marks omitted). A facial challenge is evaluated under the same standard as a Rule 12(b)(6) motion, "accepting as true all material factual allegations of the complaint, and drawing all reasonable inferences in favor of the plaintiff." *Id.* at 56–57 (cleaned up). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). "Each element of standing must be supported with the manner and degree of evidence required at the successive stages of the litigation." *John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 736 (2d Cir. 2017) (quotation marks and citation omitted).

Article III standing requires that "parties suing in federal court establish that a 'Case' or 'Controversy' exists." *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 358 (2d Cir. 2016). To assess whether Article III standing is met, courts apply the *Lujan* three-part test of injury in fact, causation, and redressability. *Id.* (quoting *Lujan*, 504 U.S. at 560–61).

First, as to standing's injury requirement, the Amended Complaint states that defendants added amounts "to Plaintiff's loan balance [that] were excessive, illegal, and/or improper." AC ¶ 18. Furthermore, Defendants continue to improperly manage Ms. Murray's loan balance. *Id.* ¶ 20. Ms. Murray has sufficiently alleged for purposes of establishing standing that she suffered monetary injury from defendants' actions. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021) ("If a defendant has caused physical or monetary injury to the plaintiff, the plaintiff has

suffered a concrete injury in fact under Article III.").[8] Second, as to standing's causation requirement, the Amended Complaint identifies defendants as the servicer or subservicer of Ms. Murray's mortgage. AC ¶¶ 32–33. Ms. Murray alleges that defendants' actions are responsible for account errors that led to her "increased debt and financial burden." *Id.* ¶ 80. Standing's "fairly traceable" causation standard is "a standard lower than that of proximate causation" and a "defendant's conduct that injures a plaintiff but does so only indirectly … may suffice for Article III standing." *Carter*, 822 F.3d at 55–56 (citing *Rothstein v. UBS AG*, 708 F.3d 82, 91–92 (2d Cir. 2013)). Defendants, in levying improper fees on her loan balance, are the cause of Ms. Murray's monetary injury.[9] Defendants, in failing to acknowledge or respond to Ms. Murray's written requests for information, contribute to the continued accumulation of these fees as Ms. Murray is unable to identify and challenge account errors. Finally, as to standing's redressability element, defendants—as the servicers of Ms. Murray's mortgage—are positioned to redress her injury by providing her with information regarding her mortgage or correcting any inaccurate fees that may have accrued.

---

[8] Plaintiff incorrectly argues that Article III standing "may exist solely by virtue of statutes creating legal rights." Pl.'s Opp. at 14. *See TransUnion LLC v. Ramirez*, 594 U.S. at 426 ("Congress's creation of a statutory prohibition or obligation and a cause of action does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III.").

[9] My conclusion that Ms. Murray has adequately pled causation for purposes of establishing Article III standing does not contradict my finding below that she has not adequately pled actual damages as to her RESPA claims. Standing analysis requires more general analysis of whether defendants' *alleged actions* harmed Ms. Murray in some way that is redressable. Analyzing whether Ms. Murray has pled a cognizable claim under RESPA requires a specific inquiry into whether Defendants' *violation of RESPA* resulted in her injuries.

I find that I have the statutory and constitutional power to adjudicate Ms. Murray's claims, that she has properly alleged standing, and deny defendants' motion to dismiss under Rule 12(b)(1) as to plaintiff's claims, which I evaluate below under Rule 12(b)(6).

## II.    Rule 12(b)(6) Motion to Dismiss

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although a court must "accept[ ] as true the factual allegations in the complaint and draw[ ] all inferences in the plaintiff's favor," *Biro v. Conde Nast*, 807 F.3d 541, 544 (2d Cir. 2015), it need not "accept as true legal conclusions couched as factual allegations," *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475–76 (2d Cir. 2009). In addition to the allegations in the Amended Complaint, a court may consider documents that are incorporated by reference, documents which are integral to the pleading, and documents of which it may take judicial notice, including those filed in another court proceeding. *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

## III.    Real Estate Settlement Procedures Act

Responding to abusive real estate settlement practices, Congress enacted RESPA "to insure that consumers throughout the Nation are provided with greater and more timely information on the nature and costs of the settlement process and are protected from unnecessarily high settlement charges." 12 U.S.C. § 2601(a). Under RESPA, borrowers can send mortgage loan servicers a

QWR, which the statute defines as "written correspondence … that (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B). Upon receiving a QWR, servicers of federally related mortgage loans must conduct an investigation, make appropriate corrections in the account of the borrower, and provide a written explanation about why the servicer believes the account of the borrower is correct or why the information requested is unavailable. 12 U.S.C. § 2605(e)(2); *See generally Roth v. CitiMortgage Inc.*, 756 F.3d 178, 181 (2d Cir. 2014) (per curiam); *Friedman v. Maspeth Fed. Loan & Sav. Ass'n*, 30 F.Supp.3d 183, 189 (E.D.N.Y. 2014).

RESPA also contains a notice provision that requires servicers of federally related mortgage loans to "notify the borrower in writing of any assignment, sale, or transfer of the servicing of the loan to any other person." 12 U.S.C. § 2605(b)(1). Typically, these notices shall be made no less than 15 days before the effective date of transfer of loan servicing, and include information such as the effective date of transfer, contact information for inquiries related to the service transfer, and a statement that the transfer does not affect any term or condition of the security instruments other than terms directly related to the servicing of the loan. *Id.* §§ 2605(b)(2), (3). The transferee loan servicer is under a similar obligation to provide the borrower with notice and information. *Id.* § 2605(c).

Borrowers have a private right of action to recover "any actual damages" caused by a servicer's failure to comply with any provision of Section 2605. 12 U.S.C. § 2605(f). This private right of action also permits recovery for damages caused by a servicer's violation of Regulation

X, which is Section 2605's implementing regulation as established by the Consumer Financial Protection Bureau (CFPB).[10]

The questions before me are whether Ms. Murray brings cognizable claims under RESPA and Regulation X based on defendants' failure to acknowledge or respond to her written requests for information, and failure to inform her of changes in her loan servicing in 2018 and 2019.

**1. Failure to Respond to Borrower Inquiries**

Ms. Murray's first claim against defendants is based on their failure to respond to her written requests for information under RESPA, 12 U.S.C. §§ 2605(e), 2605(f) and its implementing regulations 12 C.F.R. §§ 1024.35, 1024.36. AC ¶¶ 51–82. While I agree with plaintiff that she sufficiently alleges that defendants violated RESPA in failing to respond her QWRs, I find that she has not pled a cognizable claim because the Amended Complaint does not sufficiently allege that she suffered actual damages as a result of defendants' failure to respond to her requests.

**A. Qualified Written Requests**

First, defendants argue that they were not obligated to respond to Ms. Murray's QWRs because they were "overbroad and unduly burdensome." Defs.' Mot. at 5. Based on Ms. Murray's allegations that defendants did not acknowledge or respond in any way, AC ¶¶ 37–38, I find that defendants violated their obligations under RESPA.

---

[10] The CFPB has stated that "regulations established pursuant to section 6 of RESPA are subject to section 6(f) of RESPA, which provides borrowers a private right of action to enforce such regulations." Mortgage Servicing Rules, 78 Fed. Reg. at 10714 n.64. I assume, for purposes of deciding this motion, that such a private right of action exists, given the CFPB's statements, the remedial purposes of RESPA and Regulation X, and the provision of a private right of action in 12 U.S.C. § 2605(k)(1)(E) through § 2605(f). ("A servicer of a federally related mortgage shall not … fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter.").

A QWR must "include[] a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B). "To plead a claim under the RESPA, plaintiff must offer proof either by attaching the letter or pleading with specificity such facts … that the Court may determine if the letter qualifies as a QWR." *Kilgore v. Ocwen Loan Servicing, LLC*, 89 F. Supp. 3d 526, 538 (E.D.N.Y. 2015). Here, Ms. Murray alleges that her attorneys mailed QWRs to defendants on May 6, 2024 and June 18, 2024. AC ¶¶ 34, 39. She has also attached copies of the letters sent to defendants as exhibits to her complaint. *See* ECF Nos. 14-3 ("NewRez Request"); 14-4 ("PHH Request"); 14-5 ("Second NewRez Request"); 14-6 ("Second PHH Request").[11] According to Ms. Murray, these letters meet the criteria of a QWR. AC ¶¶ 62, 71.

Regulation X specifies that a QWR can fall under two, sometimes overlapping, categories: a "notice of error," covered under 12 C.F.R. § 1024.35, or a "request for information," covered under 12 C.F.R. § 1024.36. A servicer's obligations to respond to written requests differ slightly under Section 1024.35 and Section 1024.36, though a single QWR may fall under both categories such as by concurrently requesting account information and asserting a servicer's failure to provide such a statement. While Ms. Murray brings her first count under both Sections 1024.35 (covering notices of error) and 1024.36 (covering requests for information), AC ¶¶ 45–82, she does not clearly specify what category she believes that her QWRs fall under and conflates the claims she brings under both sections. Defendants contend that the four written requests were not notices of

---

[11] The title of these letters reference "Reg. X Section 3500.21(e)(1)" which appears to correspond to a previous version of the regulation effective when RESPA was implemented by the Department of Housing and Urban Development ("HUD"). The 2010 Dodd-Frank Wall Street Reform and Consumer Protection Act transferred authority for administering, enforcing, and implementing RESPA from HUD to the CFPB in 2010, and Regulation X is now found in 12 C.F.R. § 1024.

error because they "did not contain any notice of a potential covered error … or any perceived problems with the Deferred Principal Balance," Defs.' Mot. at 5, but concede that they were, at the very least, requests for information. *Id.* at 5–7.

Nevertheless, I find that defendants' inaction violated RESPA and Regulation X no matter what category or categories that Ms. Murray's four QWRs fall under. According to the Amended Complaint, defendants did not acknowledge or respond to any of Ms. Murray's letters. AC ¶¶ 65, 69, 73, 76. Defendants argue that the QWRs are "overbroad" and "unduly burdensome" requests for information, and therefore did not require any acknowledgment or response at all. Def. Mot. at 5.

Not so. Under RESPA, mortgage servicers must acknowledge receipt of QWRs within 5 business days, 12 U.S.C. § 2605(e)(1)(A), and then provide an appropriate written response within 30 days. *Id.* § 2605(e)(2). Although 12 C.F.R. 1024.36(f)(1) outlines exceptional circumstances in which the five-day acknowledgment requirement does not apply to a request for information, such as if the request is "overbroad or unduly burdensome," 12 C.F.R. 1024.36(f)(2) requires a servicer invoking an exception to "notify the borrower of its determination in writing not later than five days … after making such determination" and "set forth the basis under paragraph (f)(1) … upon which the servicer has made such determination." A servicer has similar obligations in responding to a notice of error. 12 C.F.R. § 1024.35(g)(2) ("If a servicer determines that, pursuant to this paragraph (g), the servicer is not required to comply with the requirements … the servicer shall notify the borrower of its determination in writing not later than five days . . . after making such determination."). Thus, even if Ms. Murray's QWRs fell under one of the exceptions in Regulation X, defendants were still required to provide a written response, which they apparently failed to do.

Furthermore, defendants, in citing Regulation X's overbroad or unduly burdensome exception in 12 C.F.R. § 1024.36(f)(1)(iv), ignore their obligation to identify a valid information request within an overbroad submission if it is reasonable to do so. *Id.* In other words, even assuming that Ms. Murray's information requests were in fact overbroad or unduly burdensome, defendants still needed to provide the standard five-day acknowledgment and subsequent response if they could reasonably identify an appropriate information request within her submission. While defendants cite *Anderson v. Wells Fargo Home Mortg.*, No. 2:16-CV-01783, 2017 WL 4181114, at *5 (E.D. Cal. Sept. 21, 2017), for the proposition that an overbroad and unduly burdensome request does not require a response, that case is inapposite. The servicer in *Anderson* had responded once already to the QWRs and the plaintiff was challenging the sufficiency of that response. *Id.* Here, defendants never responded to Ms. Murray's QWRs at all. In turn, Ms. Murray was never afforded the opportunity to challenge the grounds on which her May 6, 2024 written requests were denied or to modify the scope of her subsequent requests on June 18, 2024.

Defendants additionally argue that they did not need to respond to Ms. Murray's four QWRs because they are "completely silent on the one matter" that she seeks to remedy in this lawsuit—the 2011 Loan Modification. Although that may be true, it does not release them from their obligation as Ms. Murray's mortgage servicers to provide her with the procedures and account information that she is entitled to under RESPA. Defs.' Mot. at 7.

Taking the allegations in plaintiff's Amended Complaint as true, I find that defendants violated RESPA because they failed to provide any acknowledgment or written response to the four QWRs. Even if the requests were in fact covered under RESPA's implementing regulation's

exception for overbroad requests, defendants had an obligation to provide the appropriate written response.[12]

## B. Actual Damages.

While Ms. Murray has successfully alleged that defendants violated provisions of RESPA and Regulation X, she has failed to plead actual damages resulting from defendants' failure to respond to her written requests.

"[I]n the traditional RESPA Section 6 case, the failure of a servicer to provide information to a borrower or to correct errors in the borrower's account results in readily ascertainable damages, such as an unwarranted service charge or an inflated monthly mortgage payment." *Sutton v. CitiMortgage, Inc.*, 228 F. Supp. 3d 254, 276 (S.D.N.Y. 2017). Although RESPA may be used to recover damages incurred before a QWR is sent, RESPA applies only to errors in the *servicing* of a loan, not modification of a loan. *See e.g.* 12 U.S.C. § 2605(k)(1)(C) ("A servicer of a federally related mortgage shall not … fail to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties."). Servicing is defined as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan … and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C. § 2605(i)(3).

---

[12] While my conclusion that defendants were in violation of RESPA does not address whether Ms. Murray's QWRs did in fact contain overbroad or unduly burdensome requests for information, I remind plaintiff that QWRs must request information "relating to the *servicing* of such loan" as specified in 12 U.S.C. § 2605(e)(1)(A) (emphasis added) and that an action brought under RESPA must assert damages related to loan servicing. *See infra* Section IIIB.

Courts both before and after the Dodd–Frank amendments to RESPA "distinguish[] loan servicing inquiries from loan modification inquiries," and have held that liability under § 2605(e)(1) does not inhere in an inquiry challenging a loan's creation or validity. *Sutton*, 228 F. Supp. 3d at 266 (collecting cases); *see also Gorbaty*, 2014 WL 4742509, at *7 ("[C]ourts routinely interpret section 2605 as requiring a QWR to relate to the servicing of a loan, rather than the creation or modification of a loan."); *Bravo v. MERSCORP, Inc.*, No. 12-CV-884, 2013 WL 1652325, at *3 (E.D.N.Y. Apr. 16, 2013) (distinguishing "communication[s] challenging the validity of the loan" from "communication[s] relating to the servicing of the loan"); *see also Wolfbauer v. Ocwen Loan Servicing, LLC*, No. 4:15-CV-3141, 2016 WL 1170982, at *3 (D. Neb. Mar. 24, 2016) (holding that an inquiry about the validity, ownership, transfer, assignment, or potential modification of a loan is not "related to the servicing" of the loan and does not constitute a QWR). The only improperly imposed fees and charges alleged in the Amended Complaint appear to arise from the 2011 Loan Modification, and do not point to any ongoing irregularities with the *servicing* of Ms. Murray's mortgage.

Furthermore, a cognizable RESPA claim requires the plaintiff to identify damages that were proximately caused by defendant's alleged violations of that statute. *See Kilgore v. Ocwen Loan Servicing, LLC*, 89 F. Supp. 3d 526, 539 (E.D.N.Y. 2015) ("[T]o survive a motion to dismiss, the complaint must contain factual allegations suggesting that any damages plaintiff suffered were proximately caused by defendant's violations of § 2605, and conclusory allegations to that effect will not suffice." (quotation marks omitted and alterations adopted)); *Sutton*, 228 F. Supp. 3d at 274 (same). For example, in *Gorbaty v. Wells Fargo Bank, N.A.*, the plaintiff was required to allege injury and resulting damages that were caused by "the timing and form of Wells Fargo's responses to Plaintiff's QWRs." No. 10-CV-3291, 2012 WL 1372260, at *5, *16–*17 (E.D.N.Y. Apr. 18,

2012) (finding that allegations of damages were insufficient where plaintiff "d[id] not explain how these problems were caused specifically by Wells Fargo's alleged § 2605 violations").

Ms. Murray has not adequately pled that defendants' failure to respond to her QWRs proximately caused her "actual damages" in the form of "increased debt and financial burden resulting from improperly imposed fees, interest, and other charges added to her loan balance," payment of attorneys' fees, and emotional distress. AC ¶ 81. Conclusory assertions of actual damages caused by a RESPA violation do not suffice. *Corazzini v. Litton Loan Servicing LLP*, No. 1:09–CV–199, 2010 WL 6787231, at *12 (N.D.N.Y. June 15, 2010) ("[T]he courts have consistently dismissed complaints under RESPA if they do not allege actual damages or state merely that in a conclusory fashion the defendant caused damages to the plaintiff.").

Indeed, Ms. Murray has not, and cannot, allege that the $70,277.15 in unfair fees imposed by the Loan Modification she entered into in 2011, AC ¶ 16, were proximately caused by defendants' failure to respond to her QWRs, which she submitted more than a decade later in 2024. Defendants' failure to respond to her informational inquiries in 2024 cannot be the source of those fees, as Ms. Murray attributes those fees to the Loan Modification dated nearly thirteen years earlier.

Ms. Murray has failed to plead that any attorney's fees expended constitute actual damages. AC ¶ 88. The litigation costs of a RESPA action do not qualify as actual damages. *Jackson*, 2019 WL 3426240, at *8–9 ("[T]he costs of bringing a RESPA claim are insufficient to establish an entitlement to actual damages under § 2605."). Indeed, "[t]o permit a cause of action based on incidental costs would transform virtually all unsatisfactory borrower inquiries into RESPA lawsuits, and, in so doing, would subvert the very reason for the damages requirement in the first place." *Sutton*, 228 F. Supp. at 274–75.

Ms. Murray has also failed to plead that the emotional distress she suffered constitutes actual damages. AC ¶ 80. The Amended Complaint's allegations of emotional distress are traceable with respect to the terms and effect of the 2011 Loan Modification, and not to defendants' alleged violations of RESPA. *See Rosendale v. Mr. Cooper Grp. Inc.*, No. 19-CV-9263, 2024 WL 1484248, at *9 (S.D.N.Y. Apr. 5, 2024) (finding mental health issues traceable to the stress of potential foreclosure and not defendants' RESPA violations); *Roth v. CitiMortgage Inc.*, No. 12-CV-2446, 2013 WL 5205775, at *8 (E.D.N.Y. 2013) ("Even if plaintiff and her husband suffered emotional distress from the possible loss of their home, plaintiff has not alleged that this injury was proximately caused by defendant's failure to comply with RESPA, *i.e.*, the form and timing of its response to plaintiff's letters."), *aff'd on other grounds*, 756 F.3d 178 (2d Cir. 2014). Ms. Murray has not described any experience of emotional distress beyond this conclusory statement.

### C. Statutory Damages

For each failure to comply with Section 2605's provisions, a servicer shall be liable to the borrower for "any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $2,000." 12 U.S.C. § 2605(f)(1)(B). Ms. Murray's claim for statutory damages under RESPA fails because she has failed to plead actual damages, which are a prerequisite for statutory damages. Furthermore, even if she had adequately pled actual damages, the Amended Complaint does not reflect that defendants engaged in a pattern or practice of noncompliance.

Even had Ms. Murray shown a pattern or practice of noncompliance, her failure to plead actual damages related to defendants' failure to acknowledge and respond to her letter requests precludes the survival of her claim on statutory damages alone. Section 2605's plain language indicates that "an allegation of actual damages is necessary to state a claim for liability." *Dolan v.*

*Select Portfolio Serv.*, No. 03-CV-3285, 2016 WL 4099109, at *5 (E.D.N.Y. Aug. 2, 2016); *Jackson*, 2019 WL 3426240, at *8–9 ("Because plaintiff has not alleged any actual damages under the statute and therefore cannot establish liability, she cannot seek statutory damages."); *see also Bonadio v. PHH Mortg. Corp.*, No. 12-CV-3421, 2014 WL 522784, at *5 (S.D.N.Y. Jan. 31, 2014) (Dismissing RESPA claim for failure to allege how defendant's failure to respond caused actual damages in the form of monetary or non-economic loss, even assuming failure to respond established a pattern of noncompliance).[13]

Even assuming that defendants violated RESPA twice by not responding to Ms. Murray's letter requests, AC ¶ 42, her claim would not qualify for statutory damages.[14] Though the statute does not specify a set number of violations needed to plead "a pattern or practice of noncompliance," courts in this Circuit have held that two violations of RESPA are insufficient to support a claim for statutory damages. *See Sutton*, 228 F. Supp. 3d at 265; *Jackson*, 2019 WL 3426240, at *9 ("Even if plaintiff had properly pleaded actual damages, plaintiff has nonetheless failed to allege a pattern or practice of noncompliance that would entitle her to statutory damages … because her PAC alleges at most two violations of RESPA[.]"); *see also Kapsis v. Am. Home*

---

[13] Other courts lean differently on this question. Judge Garaufis in *Gorbaty v. Wells Fargo Bank, N.A.* observed that the word "additional" suggests that RESPA might not permit recovery of statutory damages alone, but "assume[d] without deciding that statutory damages are permissible under RESPA even absent a showing of actual damages" because he concluded that the plaintiff had not sufficiently alleged a pattern or practice of noncompliance in the first place. 2012 WL 1372260, at *5.

[14] Elsewhere, Ms. Murray argues that the facts alleged in her Amended Complaint constitute five separate violations of RESPA as to Newrez and five separate violations of RESPA as to PHH. Pl.'s Opp. at 23. However, these actions stem from at most three discrete acts as to each defendant: the failure to provide Ms. Murray with required notice of a servicing transfer, the failure to acknowledge and adequately respond to the first letter request, and the failure to acknowledge and adequately respond to the second letter request.

*Mortg. Servicing Inc.*, 923 F.Supp.2d 430, 445 (E.D.N.Y. 2013) (collecting cases). Courts have also held that three instances of noncompliance with RESPA is insufficient to establish a pattern or practice of noncompliance. *See Sutton*, 228 F. Supp. 3d at 276. "Pattern or practice means a standard or routine way of operating." *Gorbaty*, 2012 WL 1372260, at *5. Ms. Murray's allegations that defendants have engaged in widespread misconduct, AC ¶¶ 43–44, are conclusory and are based on pending litigation or settlement agreements. They are inadequate to support a claim for statutory damages under RESPA.

I find that Ms. Murray has failed to allege damages under Section 2605(f)(1). However, I grant plaintiff leave to replead in order to correct these deficiencies. A liberal reading of the Amended Complaint does not foreclose the possibility that Ms. Murray may have a valid RESPA claim. To bring a valid RESPA claim that will survive a motion to dismiss, Ms. Murray must allege additional facts that (1) she suffered damages that were proximately caused by defendants' *failure to timely respond* to her QWRs. Furthermore, Ms. Murray must allege facts illustrating that the attached letters can meet statutory requirements under 12 U.S.C. § 2605(e)(1)(B), such that her unanswered requests and corresponding damages are related to the ongoing servicing of her loan, and not the modification of her loan in 2011. Failure to address these deficiencies will result in plaintiff's RESPA claim, with respect to defendants' failure to properly respond to her QWRs, being dismissed with prejudice.

**2. Failure to Provide Required Notices**

Ms. Murray alleges that defendants failed to provide proper change-of-service notifications regarding her mortgage in violation of 12 U.S.C. §§ 2605(b), 2605(c), and 12 C.F.R. § 1024.33.

RESPA permits the lender of a federally related mortgage loan to assign, sell or transfer the servicing of the loan to another person or entity. *See* 12 U.S.C. § 2605(a); *see also* 12 U.S.C.

§ 2602(5). Under these circumstances, both the transferor and transferee servicers of the federally related mortgage loan must provide notice to the borrower of such transfer within specific timeframes. *See* 12 U.S.C. §§ 2605(b), (c); 12 C.F.R. § 1024.33(b)(1), (b)(3)(i); *see also Papapietro v. Clott*, No. 22-CV-1318, 2024 WL 3416242, at *4 (E.D.N.Y. Feb. 5, 2024). A plaintiff may recover "any actual damages to the borrower as a result of [a] failure" to comply with this notice provision, and may further recover "additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $2,000." 12 U.S.C. §§ 2605(f)(1)(A), (B). "A plaintiff seeking actual damages under § 2605 must allege that the damages were proximately caused by the defendant's violation of RESPA." *Gorbaty v. Wells Fargo Bank, N.A.*, 2012 WL 1372260, at *5 (collecting cases).

Ms. Murray has not specified any actual damages in connection with their change-of-service claim under RESPA. She only states that defendants' failure to provide notice of servicing transfers "prevent[ed] Plaintiff from being able to obtain and confirm critical account information, or to correct account errors" that led to the "continued accrual of improper fees." AC ¶ 87. Ms. Murray alleges that "PHH has been the servicer or subservicer of Plaintiff's Mortgage loan account since in or about 2018" and "Newrez has been the master servicer of Plaintiff's Mortgage since on or about April 4, 2019." *Id.* ¶¶ 32–33.[15] However, plaintiff fails to allege any improper fees or errors resulting from the loan changing hands or previous attempts to correct such fees. Instead, she relies upon the fees imposed by the 2011 Loan Modification. *Id.* ¶ 88. As discussed above, actual damages under RESPA must relate to errors in the servicing, not modification, of a mortgage

---

[15] RESPA provides that "[a]ny action pursuant to the provisions of [12 U.S.C. §] 2605 … may be brought … within 3 years[.]" 12 U.S.C. § 2614. It appears that plaintiff may be time-barred from challenging defendants' failure to provide required notices.

loan. I find that Ms. Murray has failed to allege any non-conclusory factual allegations specifying actual damages proximately caused by the absence of such notices. In the absence of a plausible showing of actual damages, I find that Ms. Murray has failed to state a claim against defendants for their failure to provide change-of-service notices. *See Dolan*, 2016 WL 4099109, at *5 ("[T]he plain language of Section 2605 indicates that an allegation of actual damages is necessary to state a claim for liability.").

For the reasons above, I dismiss Count II of Ms. Murray's Amended Complaint without prejudice.

## IV.    State Law Claims: Deceptive Business Acts and Accounting

In addition to contesting the merits of Ms. Murray's state law claims, defendants argue that I should decline to exercise supplemental jurisdiction over these claims altogether.[16] Def. Opp. at 11–12. Ms. Murray claims in Count III that defendants' conduct in servicing her loan amounts to a violation of Section 349 of New York's General Business Law, which prohibits "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state," where such conduct is oriented toward consumers. She alleges that defendants have engaged in deceptive acts and practices against her including "(i) charging improper, excessive, and/or duplicative fees, interest, service charges, and other amounts not permitted by the loan documents or applicable law; (ii) failing to provide required notices and disclosures required by the loan documents and applicable law; and (iii) deliberately concealing servicing errors and statutory violations by withholding and refusing to disclose Plaintiff's account information in

---

[16] Citing the three-year statute of limitations in NY CPLR 214(2) for Section 349 claims, defendants additionally argue that Ms. Murray's Section 349 claim is time-barred because she challenges an injury stemming from the 2011 Loan Modification's alleged assessment of improper fees. Def. Opp. at 12.

response to the QWRs." AC ¶ 97. In Count IV, Ms. Murray alleges that defendants are in violation of accounting requirements under 3 N.Y.C.R.R. §§ 419.4(a)-(d) because defendants have not responded to her letters with any information regarding her mortgage loan account.

I decline to exercise jurisdiction over Ms. Murray's New York State law claims. Under 28 U.S.C. § 1367(c)(3), a district court has discretion to decline to exercise supplemental jurisdiction over state-law claims "if … the district court has dismissed all claims over which it has original jurisdiction." Federal court supplemental jurisdiction over state law claims is traditionally "a doctrine of discretion, not of plaintiff's right." *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966). "Once a district court's discretion is triggered under § 1367(c)(3), it balances the traditional 'values of judicial economy, convenience, fairness, and comity,' in deciding whether to exercise jurisdiction." *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)); *see also Gibbs*, 383 U.S. at 726–27. Those factors generally weigh toward dismissing state-law claims: "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine … will point toward declining to exercise jurisdiction over the remaining state-law claims." *Cohill*, 484 U.S. at 350 n.7; *see also Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 56 (2d Cir. 2004) ("[O]ur Court has held, as a general proposition, that if all federal claims are dismissed *before trial* …, the state claims should be dismissed as well." (emphasis in original) (quotation marks omitted)); *see generally Kroshnyi v. U.S. Pack Courier Servs., Inc.*, 771 F.3d 93, 102 (2d Cir. 2014).

The *Gibbs* factors weigh against exercising supplemental jurisdiction over Ms. Murray's state law claims. Judicial economy counsels in favor of dismissal, given the thin record in this case. *See Chenensky v. N.Y. Life Ins. Co.*, 942 F.Supp.2d 388, 392 (S.D.N.Y. 2013). Given that

Ms. Murray resides in New York and brought her claims in federal court in Brooklyn, I do not observe anything inconvenient about requiring her to litigate her claims in state court. Finally, the comity interests here militate strongly in favor of dismissal. "When the balance of [the *Gibbs*] factors indicates that a case properly belongs in state court, … the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." *Cohill*, 484 U.S. at 350.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is granted without prejudice as to plaintiff's claims.

SO ORDERED.

/s/_____
Allyne R. Ross
United States District Judge

Dated: April 21, 2025
         Brooklyn, New York