UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

SHERRY ANN MURRAY,

*Plaintiff,*

-against-

NEWREZ LLC doing business as Shellpoint Mortgage
Servicing; and PHH MORTGAGE CORPORATION doing
business as PHH Mortgage Services,

*Defendants.*

24-CV-6160 (ARR)

**OPINION & ORDER**

ROSS, United States District Judge:

Plaintiff Sherry Ann Murray alleges that defendants Newrez LLC ("Newrez") and PHH

Mortgage Corporation ("PHH") violated the Real Estate Settlement Procedures Act ("RESPA"),

12 U.S.C. §§ 2601 *et seq.*, and its implementing regulation, Regulation X, 12 C.F.R. §§ 1024.1 *et*

*seq.* Ms. Murray brings those claims based on defendants' alleged failure to respond to her written

requests for information regarding ongoing charges and fees added to her mortgage loan balance

following a loan modification. For the reasons stated below, I find that the Second Amended

Complaint ("SAC") fails to allege a plausible claim under RESPA and grant defendants' motion

to dismiss.

## BACKGROUND

I presume the parties' familiarity with the factual background of this case, which I

recounted in my previous opinion and incorporate by reference herein. *See* Order Granting Mot.

to Dism., ECF No. 21 ("MTD Op.").[1] Ms. Murray filed her complaint on September 4, 2024, ECF

---

[1] In considering the present motion to dismiss, I accept as true the factual allegations in the
SAC. *See Kane v. Mount Pleasant Cent. Sch. Dist.*, 80 F.4th 101, 106 (2d Cir. 2023).

No. 1, and amended her complaint on November 22, 2024. *See* Amended Complaint, ECF No. 14 ("AC"). The Amended Complaint alleged that defendants, as the servicer of Ms. Murray's loans, violated their duties to provide account information and to remedy servicing and account errors under RESPA and its implementing regulation, Regulation X. AC ¶¶ 45–50. Defendants moved to dismiss the amended complaint on December 12, 2024, pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6). *See* ECF Nos. 16 & 17. On April 21, 2025, I issued an order and opinion finding that Ms. Murray failed to allege damages, as required by Section 2605(f)(1). *See* ECF No. 21. I granted Ms. Murray leave to amend, and specified that she must allege that she suffered damages that were proximately caused by defendants' failure to timely respond to her Qualified Written Requests ("QWR") and that any unanswered requests for information must have been related to the servicing—rather than modification—of her loan.

Ms. Murray filed her Second Amended Complaint on April 25, 2025. *See* SAC, ECF No. 23. She alleges that her attorneys mailed two letters to PHH and Newrez on May 6, 2024, both of which she asserts constituted Qualified Written Requests ("QWR") under Section 2605(e). *Id.* ¶¶ 70–71. The letters sought information related to the servicing of her mortgage loan, including payment and transaction histories, and fee itemization details. *Id.* ¶ 70. The letters each included Ms. Murray's name, address, account number, and a list of specific servicing-related account information that she sought. *Id.* ¶ 71. PHH and Newrez never acknowledged receipt of the purported QWRs or provided a written response. *Id.* ¶¶ 73–79. Responding to defendants' failure to respond to the first set of QWRs, Ms. Murray's attorneys again mailed QWRs to PHH and Newrez on June 18, 2024. *Id.* ¶¶ 80–81. Again, neither PHH nor Newrez acknowledged receipt or provided a written response. *Id.* ¶¶ 86–91.

Ms. Murray alleges that defendants' failure to respond to her QWRs not only constituted a violation of RESPA and its implementing regulation, *id.* ¶¶ 73–79, 85–91, but also impeded her ability to identify and request corrections on specific account and servicing errors. *Id.* ¶ 92. For instance, because defendants failed to respond to the first set of QWRs, Ms. Murray alleges that she was unable to challenge the grounds on which the information she requested was withheld, or to modify the scope of her subsequent QWR. *Id.* ¶ 93. Furthermore, Ms. Murray alleges that defendants' refusal to investigate her account has resulted in the accumulation of increased interest on her loan balance since the date of defendants' failure to respond to her QWRs. *Id.* ¶ 94. Ms. Murray alleges that these increased interest charges stem from at least $70,277.15 in improper fees added to her loan balance following a loan modification that she entered into in 2011. *Id.* ¶¶ 12–20, 94.

## DISCUSSION

### I.    Rule 12(b)(6) Motion to Dismiss

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although a court must "accept[ ] as true the factual allegations in the complaint and draw[ ] all inferences in the plaintiff's favor," *Biro v. Conde Nast*, 807 F.3d 541, 544 (2d Cir. 2015), it need not "accept as true legal conclusions couched as factual allegations," *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475–76 (2d Cir.

2009). A court may consider documents in addition to a complaint that are incorporated by reference, documents which are integral to the pleading, and documents of which it may take judicial notice, including those filed in another court proceeding. *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

## II.    Federally Related Mortgage Loan

As an initial matter, I reject defendants' argument that Ms. Murray has not properly alleged that her mortgage is "federally related." ECF No. 30-6 at 4, 10. The term "federally related mortgage loan" is defined as any loan which "is secured by a first or subordinate lien on residential real property (including individual units of condominiums and cooperatives) designed principally for the occupancy of from one to four families" and "is made in whole or in part by any lender the deposits or accounts of which are insured by any agency of the Federal Government, or is made in whole or in part by any lender which is regulated by any agency of the Federal Government." 12 U.S.C. § 2602(1); *see also Midouin v. Downey Sav. & Loan Ass'n, F.A.*, 834 F. Supp. 2d 95, 110 (E.D.N.Y. 2011) ("[A] 'federally related mortgage loan,' . . . includes a loan secured by a first or subordinate lien on residential real property."). The Second Amended Complaint and the documents incorporated by reference suggest that the loan serviced by defendants meets this definition. Ms. Murray's SAC alleges that she owns and resides at the property at issue, that she is the obligor on a loan secured by the mortgage, and that the mortgage was recorded as a lien against the property. SAC ¶¶ 2, 10–11. Furthermore, the Second Amended Complaint alleges that defendants are or were the "servicer" of Ms. Murray's loan as defined by RESPA. *Id.* ¶ 56.

Accordingly, Ms. Murray's SAC alleges sufficient facts to establish that RESPA applies to her mortgage loan.

4

### III.    Damages Under Real Estate Settlement Procedures Act

Upon receiving a Qualified Written Request, servicers of federally related mortgage loans must conduct an investigation, make appropriate corrections in the borrower's account, and provide a written response explaining why the servicer believes the account of the borrower is correct or why the information requested is unavailable. 12 U.S.C. § 2605(e)(2); *See generally Roth v. CitiMortgage Inc.*, 756 F.3d 178, 181 (2d Cir. 2014); *Friedman v. Maspeth Fed. Loan & Sav. Ass'n*, 30 F.Supp.3d 183, 189 (E.D.N.Y. 2014). Ms. Murray's sole remaining claim against defendants is based on their failure to respond to her written requests for information under RESPA, 12 U.S.C. §§ 2605(e), 2605(f) and its implementing regulations 12 C.F.R. §§ 1024.35, 1024.36. SAC ¶¶ 48–98. I found in my previous opinion and order that defendants had violated their obligations under RESPA by failing to respond in any way to Ms. Murray's QWRs. *See* MTD Op. at 10–14. The question that remains is whether plaintiff has sufficiently alleged damages stemming from defendants' failure to acknowledge or respond to her written requests for information. Based on the Second Amended Complaint, I find that Ms. Murray fails to plead that defendants' failures to respond caused actual damages.

Borrowers have a private right of action to recover "any actual damages" caused by a servicer's failure to comply with any provision of Section 2605. 12 U.S.C. § 2605(f). This private right of action also permits recovery for damages caused by a servicer's violation of Regulation X, which is Section 2605's implementing regulation as established by the Consumer Financial Protection Bureau (CFPB).

"[I]n the traditional RESPA Section 6 case, the failure of a servicer to provide information to a borrower or to correct errors in the borrower's account results in readily ascertainable damages, such as an unwarranted service charge or an inflated monthly mortgage payment." *Sutton*

5

*v. CitiMortgage, Inc.*, 228 F. Supp. 3d 254, 276 (S.D.N.Y. 2017). Although RESPA may be used to recover damages incurred before a QWR is sent, RESPA applies only to errors in the *servicing* of a loan, not modification of a loan. *See*, *e.g.* 12 U.S.C. § 2605(k)(1)(C) ("A servicer of a federally related mortgage shall not . . . fail to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties."). Servicing is defined as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan . . . and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C. § 2605(i)(3).

Courts both before and after the Dodd–Frank amendments to RESPA "distinguish[] loan servicing inquiries from loan modification inquiries," and have held that liability under § 2605(e)(1) does not apply to inquiries that challenge a loan's creation or validity. *Sutton*, 228 F. Supp. 3d at 266 (collecting cases); *see also Gorbaty*, 2014 WL 4742509, at *7 ("[C]ourts routinely interpret section 2605 as requiring a QWR to relate to the servicing of a loan, rather than the creation or modification of a loan."); *Bravo v. MERSCORP, Inc.*, No. 12-CV-884, 2013 WL 1652325, at *3 (E.D.N.Y. Apr. 16, 2013) (distinguishing "communication[s] challenging the validity of the loan" from "communication[s] relating to the servicing of the loan").

Furthermore, a cognizable RESPA claim requires the plaintiff to identify damages that were proximately caused by defendant's alleged violations of that statute. *See Kilgore v. Ocwen Loan Servicing, LLC*, 89 F. Supp. 3d 526, 539 (E.D.N.Y. 2015) ("[T]o survive a motion to dismiss, the complaint must contain factual allegations suggesting that any damages plaintiff suffered were proximately caused by defendant's violations of § 2605, and conclusory allegations to that effect

will not suffice." (quotation marks omitted and alterations adopted)); *Sutton*, 228 F. Supp. 3d at 274 (similar). Thus, a plaintiff must allege injury and resulting damages that were caused by "the timing and form of [defendant's] responses to Plaintiff's QWRs." *Gorbaty v. Wells Fargo Bank, N.A.*, No. 10-CV-3291, 2012 WL 1372260, at *5, *16–*17 (E.D.N.Y. Apr. 18, 2012) (finding that allegations of damages were insufficient where plaintiff "d[id] not explain how these problems were caused specifically by Wells Fargo's alleged § 2605 violations").

While the only improperly imposed fees and charges alleged in the Amended Complaint were attributed to the 2011 Loan Modification itself, Ms. Murray's Second Amended Complaint now points to *interest* accruing on the 2011 Loan Modification as the source of actual damages. SAC ¶¶ 94-98 ("Plaintiff is entitled to recover actual damages . . . which include (i) *per diem* interest of $8.18 on the improper Capitalized Sums totaling at least $70,277.15, which Plaintiff has been unable to address or remove from her loan balance due to Defendants' failure to respond to her QWRs"). In other words, Ms. Murray alleges that defendants' failure to respond to her QWRs resulted in an "inflated monthly mortgage payment" because she is unable to correct her inflated mortgage loan balance, and that the interest on this inflated balance constitutes actual damages. *Sutton*, 228 F. Supp. 3d. at 276; SAC ¶¶ 95–96. However, Ms. Murray fails to consider that the "improper Capitalized Sums" of $70,277.15 resulting from the 2011 Loan Modification were never subject to correction from her QWRs in the first place because they stem from a modification—rather than servicing—of the loan. SAC ¶ 96. The inflated interest payments that the Sixth Circuit found to constitute actual damages in *Marais v. Chase Home Fin. LLC*, 736 F. 3d 711, 720-21 (6th Cir. 2013), are different because they were caused by the servicer's failure to correct or investigate misapplied *payments* on a loan balance. In *Marais*, the inflated interest charges on the overall balance constituted actual damages under RESPA because they were caused

by a loan servicer's failure to properly process loan payments. In contrast, Ms. Murray fails to plead actual damages because the inflated interest charges on the overall balance were caused by a loan modification.

Finally, Ms. Murray continues to allege that she is owed damages resulting from the costs of preparing her QWRs. SAC ¶¶ 97–98. For the reasons stated in my previous opinion and order, MTD Op. at 16, Ms. Murray fails to plead that the postage and attorney's fees she expended on mailing the QWRs and pursuing this litigation constitute actual damages. SAC ¶¶ 96–98. The costs of a RESPA action do not qualify as actual damages. *Jackson*, 2019 WL 3426240, at *8–9 ("[T]he costs of bringing a RESPA claim are insufficient to establish an entitlement to actual damages under § 2605."). Indeed, "[t]o permit a cause of action based on incidental costs would transform virtually all unsatisfactory borrower inquiries into RESPA lawsuits, and, in so doing, would subvert the very reason for the damages requirement in the first place." *Sutton*, 228 F. Supp. 3d at 274–75.

As Ms. Murray has failed to correct the Amended Complaint's deficient damages allegation, I find that the Second Amended Complaint fails to allege actual damages under RESPA.[2]

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is granted as to plaintiff's remaining RESPA claim without leave to amend.

---

[2] Nothing in this order precludes Ms. Murray from filing QWRs in the future to seek information about or correct irregularities related to the servicing of her loan, such as improperly processed loan payments and inconsistencies in her account balance.

SO ORDERED.

        /s/

Allyne R. Ross
United States District Judge

Dated:  September 29, 2025
        Brooklyn, New York